# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## DECEMBER SESSION, 1999

FILED

January 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

GREGORY JAMES HARPER, )
                        )
     Appellant,      )
                        )
VS.                    )
                        )
STATE OF TENNESSEE,   )
                        )
     Appellee.       )
                        )

C.C.A. NO. E1999-00798-CCA-R3-PC

SULLIVAN COUNTY

HON. R. JERRY BECK,
JUDGE

(Post-Conviction)

---

**FOR THE APPELLANT:**

DAVID W. TIPTON
P.O. Box 787
Bristol, TN 37620

**FOR THE APPELLEE:**

PAUL G. SUMMERS
Attorney General and Reporter

R. STEPHEN JOBE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

GREELEY WELLS
District Attorney General

JOSEPH EUGENE PERRIN
Assistant District Attorney General
Sullivan County Justice Center
Blountville, TN 37617

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right from the judgment of the trial court denying post-conviction relief. On September 15, 1997, the Defendant, Gregory James Harper, pleaded guilty to two counts of attempted first degree murder and three counts of selling less than .5 grams of cocaine. In accordance with his plea agreement, the trial court sentenced him as a Range I standard offender to sixteen years incarceration for each count of attempted murder and to six years incarceration for each count of the sale of cocaine. The trial court also fined him $2,000 for each count of the sale of cocaine. The trial court ordered that the sentences be served concurrently. The Defendant therefore received an effective sentence of sixteen years and fines totaling $6,000.

On August 3, 1998, the Defendant filed a pro se petition for post-conviction relief. The trial court subsequently appointed counsel to aid him in post-conviction proceedings, and the Defendant filed an amended petition for post-conviction relief, alleging (1) that his trial counsel was ineffective for advising him that he would be eligible for release after serving 30% of his sentence; (2) that his plea was unlawfully induced based on inaccurate advice that the three counts of selling cocaine were Class B felonies; and (3) that the State of Tennessee unlawfully withheld exculpatory evidence from him, namely the statements of victims Mike Danser and Larry Miller and a TBI report concerning the results of firearm and ballistics tests. At the post-conviction hearing conducted on May 13, 1999, the Defendant voluntarily waived the first and second issues presented in his petition, preserving only the third issue for our consideration. In addition, he stated that he wished to preserve his ineffective assistance of counsel claim only as to his third claim of error. Simply stated, he contended that the State withheld exculpatory evidence from him, and in the alternative, he argued that if the State did in fact disclose the evidence at issue to his trial counsel, his trial counsel was ineffective for failing to share or discuss it with him.

The post-conviction court did not delve deeply into the underlying facts of this case. However, at the guilty plea proceeding, the State, with the consent of the defense, stipulated the facts on the record. The following facts are summarized from the stipulation:[1] The Defendant and his co-defendant, Mike Walling, were members of a group called the Outcasts. The Outcasts and another group, which included the victims, had engaged in an ongoing dispute during November 1996. On November 21, 1996, members of the group which included the victims planned to go to the apartment of T.J. Phelps, a member of the Outcasts, to discuss the ongoing problems between the groups. Phelps lived in an apartment building immediately adjacent to a shopping center, and members of the victims' group met in the shopping plaza parking lot before proceeding to Phelps' apartment.

While the victims' group was gathering in the parking lot, Walling and other individuals arrived in Walling's car, parked in front of Phelps' apartment, and emerged from the car while the victims' group began to approach Phelps' apartment. Words were exchanged, shots were fired, and the victims were wounded by bullets during the gunfire. A number of gun shots came from the vicinity of Walling's vehicle.

Witnesses identified the Defendant as one of the shooters. Police recovered numerous shell casings at the scene, which were sent to the Tennessee Bureau of Investigation for analysis. They also recovered a .22 caliber semi-automatic handgun from the apartment of Tracy Phelps, the sister of T.J. Phelps. Tracy Phelps told police that she had seen her brother hide the gun in her apartment.

At the post-conviction hearing, the Defendant testified that his trial counsel

---

[1] The facts in the record pertaining to the sale of drugs are not pertinent to our disposition of the case.

never discussed with him the TBI lab report concerning the results of tests performed on a gun used in the shooting and on shell casings found at the scene. He stated he was not aware at the time of his plea that such a report existed. He further claimed that he initially learned of the report from his co-defendant, who was incarcerated with him and who possessed a copy of the report.

The Defendant explained how he believed the TBI report would have been helpful to his case: He testified that the report contained an analysis of a number of shell casings which were found at the scene, some of which were linked to the gun recovered from Tracy Phelps' apartment and later tested by the TBI. The Defendant testified that the gun tested by the TBI belonged to T.J. Phelps. He claimed that Phelps had denied firing a gun on the night in question. According to the Defendant, Phelps was to offer testimony against him at trial. The Defendant maintained that because the ballistics report showed that Phelps' gun had been fired and that shell casings found at the scene were matched to the gun, the report would have served to discredit Phelps' statement that he did not fire his gun on the night of the shooting.

The Defendant also complained that he was not furnished with statements of the victims, Larry Ray Miller, Jr. and John Michael Danser, prior to his plea hearing. He explained that in their statements to police, both victims had reported that they chose to go to the location where the shooting occurred, knowing that the Outcasts would be there. The Defendant insisted that this showed "spontaneity" and would have indicated the lack of premeditation on his part. In addition, the Defendant reported that in their statements to police, both victims denied being able to identify who shot them. Finally, he stated that he believed the State intended to show at trial that he fired his gun directly at the victims or that he shot in their direction, knowing that they would likely be hit by the bullets. He pointed out that in Danser's statement to police, Danser reported, "I treated my wound by putting alcohol and proxide [sic] on it [and] I

-4-

never went to a hospital or doctor." The Defendant contended that this showed the injuries to the victims were minimal, and therefore, one could assume that the injuries were caused by ricochet rather than by direct fire.

On cross-examination, the Defendant admitted that he was present at the preliminary hearing, where Danser testified that he could not identify who shot him and Miller. With regard to Miller, the Defendant admitted that no one knew what Miller's testimony at trial might be. He also stated that he did not deny having or shooting a gun on the night in question. He stated that he fired his gun a number of times and admitted he was aware that individuals at the scene saw him fire the weapon. He also admitted he was aware that T. J. Phelps was known to fire his gun at his home and agreed that one might expect to find shell casings at the scene from previous occasions when Phelps fired shots.

Terry Frye, the Defendant's trial counsel, also testified at the post-conviction hearing. Contrary to the Defendant's testimony, he testified that he shared with the Defendant all of the discovery materials which he received from the State and stated he did not believe that any exculpatory evidence had been withheld from the defense. He maintained that prior to the plea hearing, he discussed with the Defendant the anticipated testimony of all trial witnesses.

Frye testified that although he did not receive copies of the written statements of Miller and Danser during the discovery process, the State advised him that he would receive actual copies of the statements at trial after Miller and Danser testified. However, he stated that he received other materials during discovery which he discussed with the Defendant, including a copy of the preliminary hearing at which Danser testified. He stated that he discussed with the Defendant the fact that Danser could not identify the shooters, which he had ascertained from Danser's testimony at the preliminary hearing, and the fact that Danser and other members of his group had gone to the scene of the shooting.

In addition, Frye testified that he believed he had seen a copy of Miller's statement to police and that he was aware of Miller's probable testimony. He stated he believed that he had once had a copy of the statement in his case file, but he did not possess it at the time of the hearing. He explained that he learned about Miller's testimony from co-defendant Walling's trial counsel, who had discussed with Miller his possible trial testimony. Frye stated that he was unsure whether Walling's counsel had received an actual copy of Miller's statement to police. However, Frye testified that he discussed with the Defendant that Miller could not identify the shooters and that there were two witnesses to the shooting who would testify that they saw the Defendant firing a gun in the direction of Danser and Miller. He further testified that he discovered in his investigation of the case that the Outcasts had been stockpiling weapons in T.J. Phelps' apartment and that there had been an ongoing conflict between the Outcasts and the group of which Miller and Danser were members.

With regard to the TBI ballistics report, Frye testified that he received a copy of the report from the State prior to the plea hearing. He stated that he shared the report with his client. He also testified that he believed the Defendant's handwriting was on the copy of the report which he kept in his file. He stated, "I know that Mr. Harper made notes on various documents. I cannot specifically say this is his writing, but I cannot imagine it would be anyone else's."

A petitioner in an post-conviction proceeding bears the burden of proving allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Furthermore, "findings of fact [made by] the trial judge are conclusive on appeal unless the evidence preponderates against the judgment." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). Questions concerning the credibility of the witnesses and the weight and value to be afforded their testimony are factual issues to be resolved

by the trial court. <u>Bates v. State</u>, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

In <u>Brady v. Maryland</u>, the United States Supreme Court established the prosecution's duty to furnish the accused with exculpatory evidence that is material either to the accused's guilt or innocence or to the potential punishment which may be imposed. 373 U.S. 83 (1963). In order to establish a due process violation under <u>Brady v. Maryland</u>, a defendant must demonstrate the following:

    1. The Defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information, whether requested or not);
    2. The State must have suppressed the information;
    3. The information must have been favorable to the accused; and
    4. The information must have been material.

<u>State v. Edgin</u>, 902 S.W.2d 387, 389 (Tenn. 1995). The exculpatory evidence is "material" if there is a "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Id.</u> at 390 (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995)). However, the State is not required to disclose information that the accused already possesses or is able to obtain. <u>State v. Marshall</u>, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992).

To determine whether counsel provided effective assistance at trial, a court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Cooper</u>, 849 S.W.2d at 747 (Tenn. 1993); <u>Butler</u>, 789 S.W.2d at 899. To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder

would have had reasonable doubt regarding petitioner's guilt.  <u>Strickland</u>, 466

-8-

U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52 (1985). The prejudice requirement is modified so that the petitioner "must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see also Cooper 849 S.W.2d at 746.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; he must prove his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). As previously noted, when an evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court unless the evidence preponderates against them. Cooper, 849 S.W.2d at 746 (citing Butler, 789 S.W.2d at 899).

At the conclusion of the post-conviction hearing, the trial judge made the following findings of fact: He first concluded that "the [TBI] lab report clearly was turned over to defense counsel." He further found that Frye discussed the report with the Defendant. In addition, he stated, "I'd really see where it would have been little use because [the Defendant] . . . admits in his testimony he was a shooter." The court next accredited Frye's testimony that he discussed with the

Defendant Danser's testimony at the preliminary hearing. The judge concluded that Danser's statement to police would not have "offered any surprise because [the defense] actually had equivalent testimony available, to-wit, from the Preliminary Hearing." Finally, the trial judge stated that Frye was "not surprised by the Miller statement." Thus, the trial court found that there was no withholding of evidence by the State and that Frye provided the Defendant effective representation, discussing with him all evidence obtained during discovery and the anticipated testimony of all trial witnesses.

In addition, we note that the factual stipulation entered into the record before entry of the Defendant's pleas contained some information of which the Defendant claimed no knowledge. The stipulation revealed that the victims went to the scene of the shooting of their own accord. It also revealed that the gun which was recovered from Tracy Phelps' home had been identified as the source of some of the shell casings found at the scene. The report also indicated that two guns which were never recovered were the sources of other shell casings at the scene.

Having thoroughly reviewed the record, we conclude that the evidence does not preponderate against the trial judge's findings. We conclude that each item of evidence that the Defendant contends he did not receive before the plea hearing was either turned over to the defense and discussed with the Defendant or was information already possessed or easily obtained by the Defendant. The conflicting testimony of the Defendant and his defense counsel at the post-conviction hearing presented a question of fact for resolution by the trial court. The trial court heard all testimony in this case and specifically accredited that of Mr. Frye. We will not disturb this finding on appeal. We therefore find no merit in the Defendant's claims.

Accordingly, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
JERRY L. SMITH, JUDGE